```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )      Chapter 13
DAVID D. MEYER and              )
BARBARA L. MEYER,               )      Bankruptcy No.  08-00212
                                )
     Debtors.                   )
```

### ORDER RE: OBJECTION TO CLAIM OF EXEMPT HOMESTEAD

This matter came before the undersigned on May 28, 2008 pursuant to assignment. Debtors David and Barbara Meyer appeared with attorney Janet Hong. The objecting creditors, Cleber and Marlys Meyer ("Creditors"), were represented by attorney Thomas Fiegen. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### STATEMENT OF THE CASE

Creditors assert Debtors are not entitled to claim their homestead exempt. Debtors assert their real estate is exempt because they purchased it with proceeds of a personal injury settlement and it is necessary for their support. Alternatively, Debtors claim the home exempt as a new homestead to the value of their former homestead.

### FINDINGS OF FACT

For many years prior to April or May 2007, Debtors worked at a family service station business in Spencer, Iowa, named Cleber's Service. Debtors agreed to buy the business on contract in early 2000 from David Meyer's parents, Cleber and Marlys Meyer, the objectors herein. The parties disagree on whether there was ever a full transfer of ownership of the station. In April or May 2007, Debtors left the service station business. They assert they were locked out of the business. Cleber and Marlys Meyer believe Debtors abandoned it.

In 2003, Debtor David Meyer was injured in an automobile accident. He has had several health problems since then. The family's personal injury claims relating to the accident were settled in April 2007 for $265,000. Debtors ultimately received a check in early May 2007 for $162,172.11 representing their joint portion of the settlement proceeds.

Debtors purchased a home in Spencer, Iowa in 1978 and made improvements to it through the years. After they agreed to buy the family service station business in 2000, they took out a business operating loan from State Bank in Spencer and granted the Bank a mortgage on this home. Prior to that time, it was free from any liens.

After Debtors left the service station business in Spencer, they decided to sell their home there and move to Cedar Falls, Iowa. David Meyer testified that he discussed this move with his wife, son and daughter. Debtors' son is a student at the University of Northern Iowa in Cedar Falls. By moving to Cedar Falls, he could live with the family and save money by not having to pay for room and board. Debtors decided to take the money from their personal injury settlement in a lump sum, rather than structured payments, in order to buy a home in Cedar Falls. They knew that State Bank would receive all the proceeds from the sale of their Spencer home to pay off the mortgage securing the business operating loan.

Thus, between April and July 2007, several financial transactions occurred. First, Debtors received the personal injury check for $162,172.11 in early May. On May 9, Debtors entered into an agreement to purchase their home in Cedar Falls. On May 11, Debtors accepted a purchase agreement to sell their home in Spencer.

The purchase of the Cedar Falls home was complete on June 20, 2007, with Debtors paying $154,283.64. David Meyer testified that this payment was made with the proceeds of the personal injury settlement. Debtors decided to put the title to the property solely in Barbara Meyer's name because David Meyer had many health problems and he wanted to protect his family. They feel the home belongs to the whole family. Mr. Meyer also testified that they turned over the remainder of the personal injury settlement proceeds to creditors.

The sale of the Spencer home was complete on July 12, 2007 with State Bank of Spencer receiving a check for $178,946.54 to pay towards Debtors' mortgage debt for the business operating loan. Debtors did not receive any of the proceeds from the sale of this property.

On Schedule C as amended, Debtors claim the Cedar Falls home exempt as their homestead under Iowa Code Ch. 561 and, alternatively, as personal injury settlement proceeds necessary for their support under Iowa Code sec. 627.6(16). Creditors object that Debtor Barbara Meyer acquired the property with funds

2

fraudulently conveyed to her by Debtor David Meyer. They also assert the property is not exempt from debts arising prior to the time Debtors purchased it and that Debtors cannot claim the real estate exempt as proceeds from the personal injury settlement.

## CONCLUSIONS OF LAW

Creditors, as the objecting parties, have the burden of proving that Debtors' exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c); In re Stenzel, 301 F.3d 945, 947 (8th Cir. 2002). The homestead right in Iowa is peculiarly favored. Gustafson v. Fogleman, 551 N.W.2d 312, 314 (Iowa 1996).

> In this state, homestead statutes are broadly and liberally construed in favor of exemption. "Regard should be had to the spirit of the law rather than its strict letter." The homestead exemption is not "for the benefit of the husband or wife alone, but for the family of which they are a part." . . . The policy of our law is to jealously safeguard homestead rights.

In re Matter of Bly, 456 N.W.2d 195, 199 (Iowa 1990) (citations omitted).

The purpose of homestead laws is "to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune." In re Estate of Tolson, 690 N.W.2d 680, 682 (Iowa 2005), citing 40 Am. Jur. 2d Homestead § 4, at 253 (1999). "[T]o secure the benevolent purposes of the homestead laws," we construe these laws broadly and liberally "in favor of the beneficiaries of the legislation." Tolson, 690 N.W.2d at 682, citing Millsap v. Faulkes, 20 N.W.2d 40, 42 (1945).

## EXEMPTION UNDER SECTION 627.6(16)

Iowa law provides an exemption for personal injury funds in Iowa Code sec. 627.6, which states:

> A debtor who is a resident of this state may hold exempt from execution the following property:
> . . .
>
> 16. The debtor's interest in payments reasonably necessary for the support of the debtor or the debtor's dependents to or for the benefit of the debtor or the debtor's dependents, including structured settlements,

3

resulting from personal injury to the debtor or the
debtor's dependents or the wrongful death of a decedent
upon which the debtor or the debtor's dependents were
dependent.

Iowa Code § 627.6(16) (2008).  Debtors received a payment
resulting from personal injury to David Meyer and used most of
that payment to purchase their Cedar Falls home.  They assert
that their Cedar Falls home is reasonably necessary for the
support of their family and is exempt from execution under sec.
627.6(16).

Iowa courts have recognized that in some instances exempt
funds will lose that status if their form is changed by
investment in other property.  Benson v. Richardson, 537 N.W.2d
748, 757 (Iowa 1995) (finding exempt character of earnings was
lost where husband placed earnings in wife's bank account to
defraud creditors); Iowa Methodist Hospital v. Long, 12 N.W.2d
171, 175 (Iowa 1943) (finding wages lost exempt character when
used to purchase non-exempt bonds).  The Iowa Supreme Court has
held, however that exempt personal earnings which can be traced
to a bank account continue to be exempt for 90 days.  MidAmerica
Sav. Bank v. Miehe, 438 N.W.2d 837, 838 (Iowa 1989).  Older cases
have held that property purchased with the exempt avails of life
insurance may also be held exempt.  Booth v. Martin, 139 N.W.
888, 889 (Iowa 1913) (allowing widow to hold exempt home
purchased with exempt proceeds of life insurance policy).

Looking to other jurisdictions for further guidance, the
Court notes that New York law generally distinguishes between
exemptions for particular assets and exemptions for an
entitlement to cash.  In re Lubecki, 332 B.R. 256, 258 (Bankr.
W.D.N.Y. 2005).  As to the latter, the exemption will follow the
cash into any separately identifiable assets whose acquisition is
traceable to the originally exempt fund."  Id.  Otherwise, the
exemption can produce no beneficial effect.  Id.; cf. MidAmerica
Sav. Bank, 438 N.W.2d at 839 ("In order to permit a wage earner
to enjoy any benefit from the protection afforded by [the
exemption statute], it is necessary to accord that person a
reasonable opportunity to negotiate the paycheck and spend the
funds.")  In Nebraska, one court has held that the exemption for
proceeds of a personal injury claim does not extend to a non-
exempt truck and motorcycle acquired with those proceeds.  In re
Burchard, 214 B.R. 494, 496 (Bankr. D. Neb. 1997) (noting that
the Nebraska legislature has elected to provide the citizens of
Nebraska with very little exempt property as compared to other
states, and only recently allowed a $2,400 motor vehicle
exemption).

4

This Court recently considered whether personal injury settlement funds were "reasonably necessary for the support" of the debtors and their dependents in In re Jackson, 2008 WL 161919 (Bankr. N.D. Iowa 2008) (Edmonds, J.). The Court utilized the multiple factors from In re Flygstad, 56 B.R. 884, 889-90 (Bankr. N.D. Iowa 1986), as follows:

> (1) Debtor's present and anticipated living expenses; (2) Debtor's present and anticipated income from all sources; (3) Age of the debtor and dependents; (4) Health of the debtor and dependents; (5) Debtor's ability to work and earn a living; (6) Debtor's job skills, training, and education; (7) Debtor's other assets, including exempt assets; (8) Liquidity of other assets; (9) Debtor's ability to save for retirement; (10) Special needs of the debtor and dependents; (11) Debtor's financial obligations, e.g., alimony or support payments.

See also In re Vickers, 954 F.2d 1426, 1427 n.3 (8th Cir. 1992) (setting out identical factors in determining whether pension plans are reasonably necessary for support of a debtor). In Jackson, the Court noted that the fact that the debtors had spent nearly all the money on necessities before the issue arose, also supported a finding that the funds were reasonably necessary for their support. 2008 WL 161919, at *3. Other courts have found that the obligation to maintain and support a family includes the obligation to keep a roof over their heads. In re Jackson, 95 B.R. 590, 593 (Bankr. C.D. Ill. 1989); In re Hendricks, 11 B.R. 48, 50 (Bankr. W.D. Mo. 1981) (citing Poolman v. Poolman, 289 F.2d 332, 335 (8th Cir. 1961)).

**ANALYSIS**

Debtors used the funds they received in settlement of David Meyer's personal injury claim to purchase their home in Cedar Falls. They received the settlement funds in early May 2007 and closed on their home purchase on June 20, 2007. At the time, both Debtors had recently lost their long-term jobs at the family service station business and David Meyer had many serious health problems. Mr. Meyer testified that the family needed a roof over their heads and a place to sleep at night. Even with both Debtors now working more than one job, David Meyer stated that they could not afford a mortgage payment and would not be able to qualify for one. He testified he has trouble putting a gallon of milk on the table. If the house wasn't paid for, Mr. Meyer believes they couldn't pay for utilities or food or necessary medical bills for himself and his family.

Based on the foregoing, the Court concludes that Debtors' Cedar Falls home is exempt under sec. 627.6(16) as proceeds of a payment from personal injury to David Meyer. Debtors used personal injury proceeds to give their family a roof over their heads, which is obviously necessary for their support. Considering the <u>Flygstad</u> factors, the Court finds that the funds were reasonably necessary for the family's support. Debtors had recently lost their jobs in the family business and had no other assets. Mr. Meyer still has health problems from the car accident and needs surgery on his neck. He has also been ill from other causes.

The personal injury payment did not lose its exempt status in this situation because it was invested in a home which traditionally is jealously safeguarded as exempt property under Iowa law. Debtors had no other means of providing themselves a home at the time they used the funds in this manner, as their prior home was fully encumbered by a business operating loan. The Cedar Falls home is a separately identifiable asset whose acquisition is easily traceable to the personal injury settlement payment. In these unique circumstances, the Court concludes that the sec. 627.6(16) exemption extends to the home which Debtors purchased with their personal injury settlement payment.

## EXEMPTION UNDER CHAPTER 561

In Iowa, "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16 (2008). Exceptions to the homestead exemption appear in sec. 561.21(1), which states, in pertinent part:

> The homestead may be sold to satisfy debts of each of the following classes:
>
> 1. Those contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution.

As Debtors purchased a new home subsequent to the time Creditors's claim allegedly arose, sec. 561.20 is also applicable:

> Where there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been.

6

Iowa Code § 561.20.

This Court has discussed Iowa's homestead exemption scheme in several cases, including In re White, 293 B.R. 1, 5 (Bankr. N.D. Iowa 2003). Citing Iowa law, this Court stated in White:

> A person may acquire rights in a new homestead in the following ways: 1) by purchase, with funds not derived from the old homestead, or 2) by changing from one homestead to another by a) exchange or b) purchase of a new homestead with the proceeds of the old. Proceeds from the sale of a homestead, which are reinvested in a new homestead, remain exempt from debt which predates the debtor's acquisition of the old homestead.
>
> The effect of changing homesteads is that the homestead rights are transferred to the new property. As the former is exempt from liability, the new homestead is equally exempt. As long as the value exchanged between the old and new homesteads remains unchanged, creditors are not prejudiced. Where a debtor changes from one homestead to another, the fact that the debtor had no equity in the former is irrelevant. Where the former homestead is transmuted by exchange into another homestead, the new one is a continuance of the old and the exemption dates from the acquisition and occupancy of the old. This is so, even though the debtor's means other than the old are used to acquire the new homestead.

Id. (citations omitted).[1]

**ANALYSIS**

Pursuant to the foregoing, Debtors' homestead rights in their Spencer home transferred to the Cedar Falls home when they changed homesteads. Under Iowa law, this is so even though

---

[1] In In re Allen, 301 B.R. 55, 60 (Bankr. S.D. Iowa 2003), the court distinguishes older Iowa case law, asserting that statutory amendments require that to be exempt, the new homestead must be acquired with the proceeds of the old. This distinction, however, fails to take into account the Iowa Supreme Court's pronouncement in Richards v. Orr, 92 N.W. 655, 656 (Iowa 1902), which states that the meaning of the amended statute is the same as before the elimination of the language on which Allen focuses.

Debtors did not use the proceeds of the sale of their old homestead to purchase their new home.  The home in Spencer was exempt from debts arising after Debtors purchased it in 1978.  As the value of the new homestead in Cedar Falls is less than the value of the old homestead, creditors are not prejudiced by the transfer of the homestead rights from the old to the new homestead.  The Cedar Falls home is a continuance of Debtors' old homestead and the exemption dates from Debtors' 1978 acquisition of the Spencer home.

## FRAUDULENTLY ACQUIRED FUNDS

Creditors assert David Meyer fraudulently transferred his personal injury settlement funds to Barbara Meyer, who in turn purchased the Cedar Falls home to shield the funds from creditors.  They cite Cox v. Waudby, 433 N.W.2d 716, 719 (Iowa 1988), which states: "Where wrongfully obtained funds are used to purchase property, the property does not belong to the purchasers, and therefore, to the extent of the illegal funds used, they never acquire a homestead interest."

The evidence fails to support Creditors' argument.  Both Debtors were payees on the check distributing the personal injury settlement proceeds.  The payment settled David Meyer's personal injury claim and Barbara Meyer's and their minor daughter's related claims.  No specific allocation was ever made between the claimants.  David Meyer testified that each member of the family – the two parents, their adult son and their minor daughter – was entitled to one-quarter of the total.  Debtors believed the personal injury settlement funds were joint funds and treated them as such.  They titled the Cedar Falls real estate in Barbara Meyer's name only, believing that would protect the family in light of David Meyer's poor health.  Both Debtors consider the home to be jointly owned, regardless of how it is titled.  This common sense understanding is supported by Iowa law holding that the homestead rights of a husband and wife cannot be split. Decorah State Bank v. Zidlicky, 426 N.W.2d 388, 391 (Iowa 1988); In re Powers, 286 B.R. 726, 728 (Bankr. N.D. Iowa 2002).

Another Iowa case is applicable in this situation.  See Robb v. Brewer & Wife, 15 N.W. 420, 421 (Iowa 1883).  In Robb, a husband invested his exempt personal earnings to improve homestead property titled in the name of his wife.  Id.  The court held that the husband's use of his personal earnings in payment for property purchased by his wife amounts to a gift of such property to his wife.  Id.  "As the earnings were exempt from execution . . . , a voluntary gift of such earnings was no fraud upon the husband's creditors.  The earnings being exempt

8

from execution, the husband had a right to employ them as he pleased." Id.

Based on the foregoing, the Court concludes that Debtors' purchase of the Cedar Falls home with the personal injury settlement funds did not constitute a fraud on David Meyer's creditors. The funds were joint property of both Debtors. To the extent these funds were property of David Meyer, they were arguably exempt under Iowa law, Iowa Code sec. 627.6(16), and he was entitled to use them as he pleased.

## CONCLUSION

Debtors' Cedar Falls home is properly claimed exempt. It is exempt under Iowa Code sec. 627.6(16) as proceeds of a payment from personal injury to Debtor David Meyer. Alternatively, the Cedar Falls home is exempt under Iowa Code chapter 561. This is a new homestead exempt to the value of Debtors' old homestead in Spencer, Iowa which Debtors purchased in 1978. Debtors' purchase of the Cedar Falls home with the proceeds of the personal injury settlement and titled solely in Debtor Barbara Meyer's name is not a fraud on the creditors of Debtor David Meyer.

**WHEREFORE**, the Objection to Claim of Exempt Homestead filed by Cleber and Marlys Meyer is OVERRULED.

**FURTHER**, Debtors' Cedar Falls home is properly claimed exempt.

DATED AND ENTERED:

July 1, 2008

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE